**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------------

**MICHAEL HOFFLER,**

                                                  **Petitioner,**

                    **v.**                                          **9:11-CV-0396**
                                                                    **(TJM)**

**NORMAN R. BEZIO, Superintendent of Great**
**Meadow Correctional Facility, ERIC T.**
**SCHNEIDERMAN, Attorney General of the State of**
**New York,**

                                                  **Respondents.**

--------------------------------------------------------------------------------

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PETITIONER:**

**OFFICE OF RAYMOND A. KELLY**          **RAYMOND A. KELLY, Esq.**
112 State Street
Suite 1005
Albany, NY 12207

**FOR THE RESPONDENT:**

**HON. ERIC T. SCHNEIDERMAN**           **LISA E. FLEISCHMANN, Esq.**
Office of the Attorney General           Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271

**THOMAS J. MCAVOY**
**Senior United States District Judge**

**MEMORANDUM-DECISION AND ORDER**

**I.      Background**

        **A.      State Court Proceedings**

        On March 19, 2004, a Rensselaer County Grand Jury charged petitioner Michael

Hoffler with two counts of Murder in the First Degree, contrary to New York Penal Law

("Penal Law") §§ 125.27(1)(a)(v)(b) and 125.27(1)(a)(vi)(b) (witness-elimination murder;

contract killing); Murder in the Second Degree, in violation of Penal Law § 125.25(1); and

Second Degree Conspiracy, contrary to Penal Law § 105.15, arising out of the December 30,

2003 fatal shooting of Christopher Drabik, who at the time had been acting as a confidential

informant for the Albany Police Department.  *See* Indictment No. 04-1024.[1]  Hoffler's jury

trial on those charges commenced in May, 2005 before Rensselaer County Court Judge

Patrick J. McGrath.  At the conclusion of that trial, Hoffler was convicted of murder in the

first degree (witness-elimination murder).  *See* Transcript of Trial of Michael Hoffler (5/2005)

(Dkt. Nos. 2-1 through 2-8) ("Trial Tr.") at pp. 1672-76.  However, on appeal, the New York

State, Supreme Court, Appellate Division, Third Department reversed Hoffler's conviction

and ordered a new trial because the oath of truthfulness had not been administered to the

jurors before they were questioned during *voir dire*.  *See People v. Hoffler*, 53 A.D.3d 116 (3d

Dept. 2008).  In arriving at that decision, the Appellate Division initially rejected Hoffler's

claims alleging pretrial error on the part of the Trial Court, including his claims that the grand

jury evidence was legally insufficient, and that the County Court erred in denying Hoffler's

pretrial motion which sought the suppression of certain evidence.  *Id.* at 118-19.  However,

the Appellate Division reversed Hoffler's conviction because that court found that "the

complete failure to provide the oath of truthfulness to the prospective jurors constituted a clear

violation of the statutory mandate of [Criminal Procedure Law ("CPL")] § 270.15(1)(a),

dissolved an important safeguard to [Hoffler's] constitutional right to a fair trial by an

---

[1] A copy of the Indictment is reproduced at Dkt. No. 5-1 at FA-894-98.

impartial jury and invalidated the entire trial." *Id.* at 124 (citations omitted).  After arriving at that determination, that court did not address various other appellate claims asserted by Hoffler, including his arguments challenging the sufficiency of the evidence adduced at trial, the weight of that evidence, and Hoffler's claim of prosecutorial misconduct.  *Id.* at 124.  The New York Court of Appeals subsequently denied Hoffler permission to appeal the Appellate Division's order to the Court of Appeals.  *People v. Hoffler*, 11 N.Y.3d 832 (2008).

On May 15, 2009, Hoffler moved to dismiss the Indictment pursuant to New York's Criminal Procedure Law ("CPL") §§ 210.20, 40.20(1), and 40.30(1)(b).  *See* Dkt. Nos. 7 & 7-1 at FA-1153-1373 ("May, 2009 Motion to Dismiss").  In that application, Hoffler argued, *inter alia*, that because the Appellate Division had ordered a re-trial of Hoffler without first evaluating the legal sufficiency of the evidence adduced at his trial, his re-trial would violate his Double Jeopardy rights.  May, 2009 Motion to Dismiss at Points I, V, VIII-XII.

In his Decision and Order dated September 16, 2009, Rensselaer County Court Judge Robert M. Jacon denied Hoffler's May, 2009 Motion to Dismiss in its entirety.  *See* Decision and Order of Judge Jacon (09/16/09) (Dkt. No. 9-1 at pp. 40-48) ("September, 2009 Decision").  In that ruling, the court initially noted that the Appellate Division order which reversed Hoffler's conviction and ordered a new trial served to nullify Hoffler's first trial, and that therefore a re-trial under the Indictment was permissible.  September, 2009 Decision at p. 5.  In addressing Hoffler's argument that the Appellate Division was legally required to address his challenges to the sufficiency of evidence prior to ordering a re-trial, and that its failure to do so constituted a fundamental defect barring his re-trial, the court found that the Appellate Division's decision reversing Hoffler's conviction was in full compliance with CPL

3

§ 470.25,[2] and because the Appellate Division's decision was in compliance with that provision of the CPL, such court was not legally required to address Hoffler's evidence sufficiency claims.  September, 2009 Decision at pp. 5-6.  The court also rejected Hoffler's argument that by not ruling on the evidence sufficiency claims, the Appellate Division subjected Hoffler to a second trial in violation of Double Jeopardy principles by concluding that an "intermediate appellate court is not required to address all issues raised in an appeal" because under CPL § 470.15(1), "an intermediate appellate court <u>may</u> consider and determine any question of law or fact involving error or defect in the criminal court proceedings.  The language does not say <u>must</u> address all questions of law or fact."  September, 2009 Decision at p. 6 (emphasis in original).

---

[2] § 470.25 provides as follows:
> 2. An order of an intermediate appellate court which reverses or modifies a judgment, sentence or order of a criminal court must contain the following:
>> (a) A statement of whether the determination was upon the law or upon the facts or as a matter of discretion in the interest of justice, or upon any specified two or all three of such bases; and
>> (b) If the decision is rendered without opinion, a brief statement of the specific grounds of the reversal or modification; and
>> (c) A statement of the corrective action taken or directed by the court; and
>> (d) If the determination is exclusively upon the law, a statement of whether or not the facts upon which the criminal court's judgment, sentence or order is based have been considered and determined to have been established. In the absence of such a statement, it is presumed that the intermediate appellate court did not consider or make any determination with respect to such facts.

*See* CPL §§ 470.25(2)(a)-(d).

4

Hoffler thereafter filed an application pursuant to Article 78 of New York's Civil Practice Law and Rules in the Third Department for an order from the Appellate Division barring his re-trial. *See* Dkt. No. 8 at FA-1410-35 ("Article 78 Petition"). The District Attorney opposed that application (Dkt. No. 10 at FA-1765-1805), and on April 1, 2010, the Third Department dismissed the petition and found that Hoffler had not demonstrated a clear legal right to an order prohibiting the prosecutor from re-trying Hoffler. *Hoffler v. Jacon*, 72 A.D.3d 1183 (3d Dep't 2010). Specifically, that Court noted that "under New York's statutory double jeopardy scheme, a person is considered to have been 'prosecuted' on an offense after the action proceeds to trial and the jury has been impaneled and sworn." *Hoffler*, 72 A.D.3d at 1184 (citing CPL § 40.30(1)(b)). Since, in reversing Hoffler's conviction, the Appellate Division concluded that the jury had never been properly sworn pursuant to CPL § 270.15(1)(a), which failure in turn "invalidated the entire trial" (*Hoffler*, 53 A.D.3d at 124), the Appellate Division found that his prior trial "was a nullity and petitioner was never 'prosecuted' under the indictment." *Hoffler*, 72 A.D.3d at 1185 (citations omitted). That court therefore concluded that Hoffler "was never placed in jeopardy even though the trial proceeded to its conclusion." *Hoffler*, 72 A.D.3d at 1185 (citations omitted). The Third Department found Hoffler's argument that his re-trial was barred because the Appellate Division failed to address his legal sufficiency and weight of the evidence claims in the context of his direct appeal to be "unavailing," *Hoffler*, 72 A.D.3d at 1185, and found no impediment to his retrial "[w]here, as here, a fundamental defect rendered the entire trial invalid." *Id.* On July 1, 2010, the New York Court of Appeals denied Hoffler's leave application "upon the ground that no substantial constitutional question is directly involved."

*Hoffler v. Jacon*, 15 N.Y.3d 768 (2010), *reconsideration denied*, *Hoffler v. Jacon*, 15 N.Y.3d 872 (2010).

      **B.**    <u>**This Action**</u>

      With the assistance of counsel, Hoffler commenced this action on April 11, 2011 through the filing of a habeas corpus petition brought pursuant to 28 U.S.C. § 2241.  *See* Dkt. No. 1 ("Petition").  In his pleading, Hoffler argues that:  (1) by failing to resolve Hoffler's challenge to the sufficiency of the evidence prior to ordering his re-trial, the Appellate Division violated Hoffler's constitutional rights; (2) the evidence presented by the prosecution at Hoffler's trial was legally insufficient to establish his guilt; and (3) CPL § 40.30(3), which allows the re-prosecution of an individual under the same indictment if an earlier prosecution has been nullified by court order, is unconstitutional.  *See* Petition; *see also* Petitioner's Memorandum of Law in Support of Petition (Dkt. No. 1-1) ("Supporting Mem.") at pp. 6-15. Petitioner has also requested that this Court conduct an evidentiary hearing to consider:  (1) Rensselaer County's alleged policy of not administering the oath of truthfulness to prospective jurors; (2) the "lack of manifest necessity for not issuing an oath of truthfulness to prospective jurors;" and (3) whether Hoffler "received an implicit acquittal" during the internal appellate process relating to his appeal.  Petition at ¶ 16.

      On May 27, 2011, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed a response in opposition to Hoffler's petition.  *See* Dkt. No. 15.  Respondent attached to his response a memorandum of law in opposition to Hoffler's petition.  *See* Dkt. No. 15-1 ("Resp. Mem.").

      On August 5, 2011, Hoffler filed a reply memorandum in further support of his

application for habeas relief.  *See* Dkt. No. 19 ("Reply").

## II.    DISCUSSION

### A.    Propriety of Bringing Action Under 28 U.S.C. § 2241

Initially, this Court notes that Hoffler has entitled this matter as a "Pretrial Petition for

a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241."  Petition at p. 1.  Hoffler asserts that

this action is properly brought by him pursuant to § 2241, rather than § 2254, while

respondent argues that this Court should consider the present proceeding as one being asserted

by Hoffler pursuant to 28 U.S.C. § 2254.  *Compare* Supporting Mem., Point I *with*  Resp.

Mem., Point I.[3]  This issue is significant because the standard of review federal courts are to

utilize in considering petitions brought under § 2254 is substantively different than the

standard of review courts are to employ when considering petitions brought under § 2241.  As

the Second Circuit explained in *Messiah v. Duncan*, 435 F.3d 186 (2d Cir. 2006), "[t]he

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110

Stat 1214, modified the standard under which we review § 2254 petitions."  *Messiah*, 435

F.3d at 196.  The AEDPA mandates that federal district courts defer to factual findings and

legal conclusions of the state court in actions brought under § 2254.  *Messiah*, 435 F.3d at 197

(citations omitted).  However, no such deference is to be afforded state court findings and

conclusions by federal courts reviewing petitions brought under § 2241.  *Martinez v.*

*Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011) ("§ 2254 is textually distinct from § 2241:  one

explicitly mandates deference, the other does not") (collecting cases).

---

[3] Hoffler reiterates his claim that this matter is properly brought pursuant to 28 U.S.C. §
2241 in the reply brief he filed in further support of his habeas application.  *See* Reply at pp. 3-
5.

The issue of whether a petition for a pretrial writ of habeas corpus is properly brought pursuant to § 2241 or § 2254 has never been squarely addressed by the Second Circuit, and indeed the Second Circuit appears to have considered such petitions under both such statutes. For example, in *United States ex rel. Scranton v. State of New York*, 402 F.Supp. 1010 (S.D.N.Y. 1975), a pretrial detainee filed a habeas corpus petition seeking an order from the district court prohibiting her re-trial on a murder charge on speedy trial grounds. *Id.* at 1011. In affirming the district court's order denying such petition, the Second Circuit "treat[ed] the petition before us as an application under the broader habeas statute, 28 U.S.C., Section 2241," *United States ex rel. Scranton v. State of New York*, 532 F.2d 292, 293 (2d Cir. 1976), and ultimately affirmed the district court's order denying that petition because the petitioner therein had failed to fully exhaust with the state courts the claims she asserted in her petition. *Id.* at 294-96.  More recently, in *Kruelski v. Connecticut Superior Court For Judicial Dist. of Danbury*, 316 F.3d 103 (2d Cir. 2003), the petitioner argued that the Double Jeopardy Clause of the United States Constitution prohibited his retrial on a misdemeanor charge that accused him of "offering to make home improvements without being registered" in the state of Connecticut. *Id.* at 104.  The petitioner filed a habeas corpus petition pursuant to § 2254 in the district court challenging his retrial, which court denied that application after finding, *inter alia*, that the decision to retry the petitioner "was not an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1)." *See Kruelski*, 316 F.3d at 105 (citation omitted).  The Second Circuit affirmed, concluding that "the Connecticut ruling was neither contrary to nor an unreasonable application of clearly established federal law, as § 2254(d) requires for a grant of a writ of habeas corpus on behalf of a person in custody pursuant to the

8

judgment of a state." *Kruelski*, 316 F.3d at 111.  However, in neither of the above cases does it appear as though either the petitioner or respondent argued that the petition could only be properly brought and considered under either § 2241 or § 2254.

In *Marte v. Berkman*, No. 11 CIV. 6082, 2011 WL 4946708 (S.D.N.Y. Oct. 18, 2011), United States District Judge John F. Keenan recently considered this very issue.  That court noted that the federal circuit courts which have specifically addressed this issue have uniformly held that a pretrial petition seeking to preclude a re-trial is properly brought pursuant to § 2241.  *Marte*, 2011 WL 4946708, at *5 (citing *Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007); *Stow v. Murashige*, 389 F.3d 880, 885 (9th Cir. 2004); *Jacobs v. McCaughtry*, 251 F.3d 596, 597 (7th Cir.2001) (per curiam); and *Stringer v. Williams*, 161 F.3d 259, 262 (5th Cir. 1998)); *see also Martinez*, 644 F.3d at 241-43; *Palmer v. Clarke*, 961 F.2d 771 (8th Cir. 1992).  The *Marte* court then opined that even though the petitioner in that case brought his action pursuant to § 2254, such petition before was properly considered under § 2241 and thereby "outside the confines of AEDPA."  *Marte*, 2011 WL 4946708, at *7.

This Court is persuaded by the above authority and therefore finds that this action was properly filed as a petition brought under 28 U.S.C. § 2241, and that the claims asserted herein must therefore be reviewed *de novo* under that statute.[4]

_____

[4] This Court is cognizant of the fact that the *Marte* case is currently on appeal with the Second Circuit, and that therefore that court may well definitively resolve this issue in its decision addressing that appeal.  *See Marte v. Berkman et al.*, No. 11-4486 (2d Cir.).  However, in light of the procedural posture of this case, which includes, *inter alia*, the stay of a criminal action in Rensselaer County Court while the present habeas corpus petition is pending, this Court finds it appropriate to resolve the issue before it concerning this matter rather than await future guidance from the Second Circuit.

B.    **Substance of Hoffler's Claims**[5]

1.    **Appellate Division's Failure to Address Hoffler's Legal Sufficiency Claim**

Petitioner claims that his federal constitutional rights were violated because the Appellate Division did not consider Hoffler's claims that the evidence adduced at trial was insufficient to support the jury's guilty verdict when it reversed his conviction.  *See* Petition at ¶ 9.  He contends that the prosecution's case was "wholly circumstantial," and lists a variety of reasons in support of his assertion that the prosecution's "case-in-chief was legally insufficient as a matter of federal constitutional law."  *Id.*; *see also* Supporting Mem., Points III, IV.

CPL § 470.15 discusses the scope of review that appellate courts in New York are required to afford criminal appeals before the Appellate Division.  That provision of the CPL provides, in relevant part:

> Upon an appeal to an intermediate appellate court from a judgment, sentence or order of a criminal court, such intermediate appellate court *may* consider and determine any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant.

CPL § 470. 15(1) (emphasis added).  Thus, where the Appellate Division has determined that a conviction must be set aside on the basis of an issue raised on appeal, it is not required to consider whether other grounds asserted by the appellant have merit.  *People v. Burke*, 96

---

[5] Since this Court has found that this action is properly considered under § 2241, it need not consider respondent's claim that this matter was not timely commenced by Hoffler within the one-year statute of limitations that governs § 2254 petitions.  *See* Resp. Mem. at pp. 17-21.  This is because no statute of limitations applies to the filing of § 2241 petitions.  *Anderson-El v. U.S. Parole Com'n*, No. 05 CIV.2697, 2006 WL 2604723, at *3 (S.D.N.Y. Sept. 11, 2006) ("[t]here is no limitations period applicable to § 2241"); *Pollack v. Hobbs*, 98 F.Supp.2d 287, 292 (E.D.N.Y. 2000) (§ 2241 "has no limitations period").

A.D.2d 971, 972 (3d Dept. 1983) (in light of the fact that the Third Department was
"reversing the judgment on other grounds, [it] need not consider if the testimonial error would
cause us to reverse in the interests of justice") (citing CPL § 470.15).

In the criminal matter below, the Appellate Division initially rejected "a host of
pretrial errors" asserted by Hoffler in support of his appeal. *Hoffler*, 53 A.D.3d at 118. It then
noted that the record established that, prior to the commencement of Hoffler's jury trial, there
was a "complete failure to swear any of the prospective jurors in accordance with" the CPL.
*Id.* at 120. In discussing this requirement, the Third Department noted that, under New York
law:

> CPL 270.15 requires the administration of two distinct and
> separate oaths prior to the inception of a jury trial. The first,
> contained in CPL 270.15 (1)(a), mandates that, prior to any
> questioning, the names of not less than 12 members of the panel
> shall be drawn and such persons "shall take their places in the
> jury box and shall be immediately sworn to answer truthfully
> questions asked them relative to their qualifications to serve as
> jurors in the action." After examination of the prospective
> jurors' qualifications and the exercise of peremptory challenges
> and challenges for cause (*see* CPL 270.15 [2]), the remaining
> jurors must be given the second prescribed oath, in which they
> are "sworn to try the action in a just and impartial manner, to
> the best of their judgment, and to render a verdict according to
> the law and the evidence" (CPL 270.15 [2]).

*Hoffler*, 53 A.D.3d at 120. The Third Department concluded that none of the prospective
jurors were ever administered the oath of truthfulness required by CPL § 270.15(1)(a) prior to
being questioned during *voir dire*, *Hoffler*, 53 A.D.3d at 121, and that the failure to comply
with that "clear statutory directive," which is "a fundamental part of a criminal jury trial,"
required the reversal of Hoffler's conviction without any proof of prejudice on the part of

11

Hoffler. *Id.* at 122-23.  It concluded its decision by noting that the failure to administer that oath "invalidated the entire trial." *Id.* at 124.  It therefore reversed Hoffler's conviction and remitted the matter back to the County Court for a new trial. *Id.*

In denying Hoffler's Article 78 Petition which sought to bar his re-trial on the Indictment, the Appellate Division noted that "the failure to administer [the required] oath to the jurors constituted a fundamental defect in the proceedings, rendering the trial a nullity." *Hoffler*, 72 A.D.3d at 1184.  That Court further reasoned that because Hoffler's trial was a nullity, he "was never 'prosecuted' under the indictment" and "never placed in jeopardy even though the trial proceeded to its conclusion." *Id.* at 1185.

Petitioner argues at some length that the Appellate Division's failure to address his argument that the evidence adduced at trial was legally insufficient to support the jury's verdict was improper and prohibits his re-trial on the charges in the Indictment.  *See* Petition at pp. 3-14; Supporting Mem. at Point IV; Reply at pp. 12-16.  However, these claims are meritless.  In New York, for a criminal defendant to succeed on an appellate challenge to the sufficiency of evidence adduced at trial, he must establish that " 'after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found essential elements of the crime beyond a reasonable doubt.' " *People v. Schulz*, 4 N.Y.3d 521, 529 (2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  In the criminal matter below, the Third Department had already determined that the "trier of fact" at Hoffler's trial had not been properly empaneled, and that therefore the "entire trial" was invalid.  *See Hoffler*, 53 A.D.3d at 124.  Since the Appellate Division determined that ***no*** trier of fact could properly consider the evidence offered at Hoffler's trial, any discussion regarding the evidence

presented to that improperly empaneled body may well have been viewed by that court to be

advisory in nature because the Third Department found Hoffler's entire trial to be both

"invalid," *Hoffler*, 53 A.D. 3d at 121, and "a nullity." *Hoffler*, 72 A.D.3d at 1185.  It is well-

settled that "the giving of [advisory] opinions is not the exercise of the judicial function" of

New York appellate courts.  *New York Public Interest Research Group, Inc. v. Carey*, 42

N.Y.2d 527, 529 (1977); *see*, *e.g.*, *Ostrover v. City of New York*, 192 A.D.2d 115, 118-19 (1st

Dept. 1993) ("it is well-established that courts are not empowered to render advisory opinions,

or determine abstract, mood, hypothetical, remote or academic questions") (internal quotation

marks and citation omitted).

Petitioner has cited no authority, and this Court's research has disclosed none, in which

the United States Supreme Court, the Second Circuit Court of Appeals, or any district court

within this circuit has declared that an appellate court must decide a challenge to the

sufficiency of the evidence notwithstanding the fact that such appellate court already

concluded that the jury that rendered the guilty verdict challenged by a party had never been

properly sworn and that therefore the entire trial was invalid.[6]

---

[6] Petitioner cites, *inter alia*, the Second Circuit's decision in *United States v. Wallach*, 979 F.2d 912 (2d Cir. 1992) in support of his claim that the Third Department was required to address his evidence sufficiency challenge in the context of Hoffler's direct appeal.  *See* Petition at pp. 17-18; Supporting Mem. at 6-7.  In that case, the Second Circuit addressed the issue of whether the Double Jeopardy Clause prohibited the re-trial of an individual after his conviction was reversed due to prosecutorial misconduct.  *Wallach*, 979 F.2d at 913.  The court stated that "a reversal of a conviction on grounds other than insufficiency does not avoid the need to determine the sufficiency of evidence before retrial may occur." *Id.* at 917 (citation omitted).  However, no allegations were made in *Wallach* that the jury in that defendant's initial trial was improperly empaneled and/or that the initial trial was a nullity.  *Wallach*, 979 F.2d at 912-921; *see also United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991) (Second Circuit reversing appellant's conviction after the court concluded that "newly discovered evidence demonstrate[d] that a principal government witness committed perjury").

The critical differences regarding the claimed errors committed at trial and the legal issues addressed by the court in *Wallach vis-a-vis* the case *sub judice* establishes that *Wallach* does not

Since the Appellate Division concluded that Hoffler's trial was invalid because prospective jury members were never administered a required oath prior to jury selection, and nothing before this Court suggests that such determination was erroneous, this Court finds that the failure of the Third Department to consider Hoffler's appellate argument challenging the sufficiency of the evidence adduced at trial was not erroneous in any way.[7]  Since Hoffler has not demonstrated that any of his constitutional rights were violated by the Third Department's failure to consider that appellate claim, he is not entitled to federal habeas relief on this theory.

### 2.   **Double Jeopardy Claim**

Petitioner also appears to argue that a finding that he was never placed in jeopardy is

---

compel this Court to conclude that the Third Department violated Hoffler's federal constitutional rights by failing to address his evidence sufficiency claim after that court concluded that errors committed during the course of Hoffler's trial had "invalidated the entire trial." *Hoffler*, 53 A.D.3d at 124.

This Court notes that the Second Circuit has recently suggested that "there may be sound reasons for refusing to consider the sufficiency of the evidence" after the Court has decided to vacate a conviction on direct appeal, such as where a subsequent change in the law may alter the proof required at a retrial. *United States v. Bruno*, No. 10-1885, ___ F.3d ___, ___ WL ___, slip op. at p. 16 (2d Cir. Nov. 16, 2011).  It appears to this Court as though the Third Department's finding that the jury before which Hoffler's criminal matter was tried was not properly sworn, thereby "invalidat[ing] the entire trial," *Hoffler*, 53 A.D.3d at 124, afforded the Third Department a "sound reason" to refrain from considering Hoffler's evidence sufficiency claims.  Regardless, nothing in *Bruno* supports any claim that the Appellate Division's failure to consider his evidence sufficiency claims in his appellate challenge to his conviction bars his re-trial on the charges in the Indictment.

[7] Moreover, after having reviewed relevant excerpts from the transcript of Hoffler's trial which were filed with the Court by petitioner's counsel, this Court disagrees with Hoffler that the evidence adduced at trial was insufficient to support the jury's verdict (*see* Supporting Mem., Point V), and instead endorses the Trial Court's determination that the prosecution established all of the elements required of it regarding the charges returned against petitioner in the Indictment.  *See, e.g.*, Trial Tr. at 1419-20 (Judge McGrath, in denying Hoffler's motion to dismiss the Indictment following close of prosecution's proof, concluding that:  "based upon all the circumstantial evidence submitted by the people, they have shown a *prima facie* case to support both counts of the indictment"); *see also id.* at 1455 (County Court reiterating its decision denying Hoffler's dismissal motion).  Thus, had the jury been properly empaneled such that it could legally consider the evidence adduced at Hoffler's trial, this Court finds that such evidence fell comfortably within the bounds established by *In re Winship*, 397 U.S. 358, 361-64 (1970) concerning the proof required at trial to sustain a criminal conviction, and that Hoffler's evidence sufficiency claim is without substance.

inconsistent with the realities of his original trial.  *See* Petition at pp. 11-12, 20.  He

specifically contends that the "extraordinary holding of the New York courts treats [his]

lengthy trial that occurred after the administration of the oath by which jeopardy attached

under the Constitution as a non-event for purposes of federal constitutional law."  *Id.* at p. 20.

These claims are specious.

Initially, these arguments appear to ignore the fact that, in reversing Hoffler's

conviction, the Appellate Division specifically found that prospective jury members were ***not***

administered an oath which is required under New York's CPL.  *Hoffler*, 53 A.D.3d at 120-24.

Petitioner's current claim that jeopardy attached "after the administration of the oath" at his

criminal trial, *see* Petition at p. 20, is therefore flawed.

Next, it is plain that, in light of the Third Department's decision which vacated

Hoffler's conviction, he was never placed in jeopardy at his initial trial.  The Supreme Court

has emphasized that "[j]eopardy denotes risk.  In the constitutional sense, jeopardy describes

the risk that is traditionally associated with criminal prosecution."  *Breed v. Jones*, 421 U.S.

519, 528 (1975); *see also United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977)

("The protections afforded by the [Double Jeopardy] Clause are implicated only when the

accused has ***actually been placed in jeopardy***") (emphasis added).  In light of the Appellate

Division's determination that reversed Hoffler's first degree murder conviction and

"invalidated the entire trial," *Hoffler*, 53 A.D.3d at 124, it is patent that petitioner was never

placed in jeopardy at his original trial.

Even if, as Hoffler suggests, he was placed in jeopardy during the course of his

original trial, his successful appeal necessitates a finding that such jeopardy never terminated

and that his re-trial on the charges contained in the Indictment is therefore permissible.  As the Supreme Court explained in *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106 (2003), "[w]here . . . a defendant is convicted of murder and sentenced . . . but appeals the conviction and succeeds in having it set aside, we have held that jeopardy has not terminated;" *see also United States v. McCourty*, 562 F.3d 458, 473 (2d Cir. 2009) ("The protection of the Double Jeopardy Clause 'applies only if there has been some event, such as an acquittal, which terminates the original jeopardy' " (quoting *Richardson v. United States*, 468 U.S. 317, 325 (1984)) (other citations omitted).  Thus, even assuming, *arguendo*, that jeopardy attached during the course of Hoffler's trial notwithstanding the fact that the jury was never properly sworn, his claim that his re-trial is prohibited by the Double Jeopardy Clause of the United States Constitution is meritless because his successful appeal did not terminate that original jeopardy.  *Sattazahn*, 537 U.S. at 106.

### 3.   Constitutionality of New York's Nullified Proceedings Rule

In his final argument in support of the present application, petitioner contends that New York's nullified proceedings rule, codified in CPL § 40.30(3), "circumvent[s], and essentially nullif[ies], the Double Jeopardy Clause of the Fifth Amendment."  Petition at pp. 22-23; *see also* Supporting Mem., Point VI; Reply at pp. 16-17.

This Court therefore briefly reviews the provision of the CPL upon which Hoffler bases this aspect of his habeas application.

CPL § 40.30 provides, in relevant part, that:

> 1. Except as otherwise provided in this section, a person "is prosecuted" for an offense, within the meaning of section 40.20, when he is charged therewith by an accusatory instrument filed

16

in a court of this state or of any jurisdiction within the United
States, and when the action either:

> (a) Terminates in a conviction upon a plea of
> guilty; or
> (b) Proceeds to the trial stage and a jury has been
> impaneled and sworn or, in the case of a trial by
> the court without a jury, a witness is sworn.

* * * * *

3. Despite the occurrence of proceedings specified in
subdivision one, if such proceedings are subsequently nullified
by a court order which restores the action to its pre-pleading
status or which directs a new trial of the same accusatory
instrument, the nullified proceedings do not bar further
prosecution of such offense under the same accusatory
instrument.

CPL §§ 40.30(1), (3).

In support of his claim that CPL § 40.30(3) is unconstitutional, Hoffler argues that the

nullified proceedings rule adopted by New York had its genesis in the Supreme Court case of

*Ball v. United States*, 163 U.S. 662 (1896), and that subsequent to that decision, courts

"permitted retrials following appellate reversals in a wide range of circumstances including

insufficient evidence at prior trials."  Petition at p. 23.  Hoffler notes that in 1978, the United

States Supreme Court decided *Burks v. United States*, 437 U.S. 1 (1978), which overruled

prior Supreme Court precedent which permitted defendants to be re-tried following an

appellate reversal for insufficient evidence.  Petition at p. 23.  Hoffler argues that "[t]he

rationale of the *Burks* opinion and the decision in *Crist v. Bretz* [437 U.S. 28 (1978)]  . . .

powerfully suggest that New York's 'nullified procedure rule,' as applied to Mr. Hoffler, runs

afoul of both the Fifth and Fourteenth Amendments."  Petition at p. 23.

In *Burks*, the Supreme Court reviewed prior Supreme Court cases that had discussed

17

the scope of the Double Jeopardy Clause. *Burks*, 437 U.S. at 6-10. The *Burks* Court noted

that those prior decisions had culminated in "at least one proposition emerg[ing]: a defendant

who requests a new trial as one avenue of [appellate] relief may be required to stand trial

again, even when his conviction was reversed due to failure of proof at the first trial." *Burks*,

437 U.S. at 10. The *Burks* Court rejected that proposition and squarely held:

> The Double Jeopardy Clause forbids a second trial for the
> purpose of affording the prosecution another opportunity to
> supply evidence which it failed to muster in the first proceeding.
> This is central to the objective of the prohibition against
> successive trials.

*Burks*, 437 U.S. at 11.[8]

In *Crist*, the Supreme Court addressed the issue of whether the federal rule that

governed the time when jeopardy attached in a jury trial was binding on the state of Montana.

*Crist*, 437 U.S. at 29.[9] In finding that the federal rules governed this issue, the *Crist* Court

explicitly held that "[t]he federal rule that jeopardy attaches when the jury is empaneled and

sworn is an integral part of the constitutional guarantee against double jeopardy." *Crist*, 437

---

[8] The *Burks* Court distinguished the reversal of a criminal conviction based upon evidentiary insufficiency from one attributable to trial court error. Specifically, that Court opined that:
> [R]eversal for trial error, as distinguished from evidentiary
> insufficiency, does not constitute a decision to the effect that the
> government has failed to prove its case. As such, it implies nothing
> with respect to the guilt or innocence of the defendant. Rather, it is a
> determination that a defendant has been convicted through a judicial
> process which is defective in some fundamental respect. . . . When this
> occurs, the accused has a strong interest in obtaining a fair
> readjudication of his guilt free from error, just as society maintains a
> valid concern for ensuring that the guilty are punished.
*Burks*, 437 U.S. at 15 (citation omitted).

[9] The *Crist* Court explained that the federal rule is that jeopardy attaches when the jury is empaneled and sworn; under the terms of the Montana statute under review, jeopardy did not attach until the first witness was sworn. *Crist*, 437 U.S. at 29.

U.S. at 38.

Hoffler's reliance on *Burks* and *Crist* is plainly misplaced.

As is discussed more fully above, the Appellate Division declined to address the issue of whether the evidence adduced at Hoffler's trial was legally sufficient. Therefore, *Burks*' pronouncement that Double Jeopardy bars the re-prosecution of an individual where an appellate court reverses a criminal conviction on evidence sufficiency grounds, *see Burks*, 437 U.S. at 11, does not provide Hoffler with legal support for his request for federal habeas intervention herein. Moreover, Hoffler's claim that *Crist* supports his request for habeas relief appears to overlook the significant fact that his first degree murder **conviction** was **reversed** by the Appellate Division based upon that court's finding that there was a "complete failure to provide the oath of truthfulness to the prospective jurors" at Hoffler's trial. Since *Crist* stands for the proposition that, "jeopardy attaches when the jury is empaneled **and sworn**," *Crist*, 437 U.S. at 38, and the jury that convicted Hoffler was **never properly sworn**, *Hoffler*, 53 A.D.3d at 124, petitioner's current claim that *Crist* supports his request for federal habeas intervention is meritless.

New York's nullified proceeding law, which permits the re-trial of an individual after an appellate court finds that a conviction must be reversed, is wholly consistent with both past and present Supreme Court authority. *See Sattazahn*, 537 U.S. at 115; *Montana v. Hall*, 481 U.S. 400, 402 (1987) ("[i]t is a venerable principl[e] of double jeopardy jurisprudence that the successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict . . . poses no bar to further prosecution on the same charge' ") (internal quotation marks and citations omitted). As in *Sattazahn*, the petition

before this Court: "hardly presents the specter of 'an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact.' " *Sattazahn*, 537 U.S. at 115 (quoting *United States v. Scott*, 437 U.S. 82, 96 (1978)). "Instead, we see here a State which . . . [seeks to] pursue its not-yet-vindicated interest in one complete opportunity to convict [one] who ha[s] violated its laws." *Sattazahn*, 537 U.S. at 115 (other internal quotation marks and citation omitted). Because Hoffler has provided no persuasive argument that supports his claim that New York's nullified proceeding law is unconstitutional, this final claim in his petition must be denied.

Finally, since all of the claims asserted by Hoffler may properly be denied by this Court without a hearing, the Court shall not conduct any evidentiary hearing in this matter as requested by petitioner. *See* Petition at p. 25.[10]

## III.  CERTIFICATE OF APPEALABILITY

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part, as follows:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . .[11]

---

[10] This Court notes, however, that it is unpersuaded by Hoffler's argument that the decisions of the Appellate Division relating to Hoffler's conviction, and/or the manner in which panels of that court decided certain cases before it, amounted to an "implicit acquittal" of petitioner. *See* Petition at p. 25 (citations to state court record omitted).

[11] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b).

28 U.S.C. § 2253(c)(1)(A). A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Since petitioner has failed to make such a showing herein,[12] the Court declines to issue any Certificate of Appealability in this matter.

**ACCORDINGLY**, it is

**ORDERED** that Hoffler's petition (Dkt. No. 1) is **<u>DENIED</u>** and **<u>DISMISSED</u>**; and it is further

**ORDERED** that no Certificate of Appealability shall be issued in this case because petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c); and it is further

**ORDERED** that the Clerk serve a copy of this Memorandum-Decision and Order on counsel for the parties to this action.

**IT IS SO ORDERED.**

Dated:November 17, 2011

Thomas J. McAvoy
Senior, U.S. District Judge

---

[12] The Court would grant a Certificate of Appealability on the issue of whether this action was properly brought pursuant to 28 U.S.C. § 2241, rather than 28 U.S.C. § 2254. However, since this Court agreed with petitioner that this matter was properly considered under § 2241, he would not benefit by pursuing any appeal on the issue of whether this action was properly considered under § 2254 rather than § 2241.